UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RODNEY S. PERRY, SR., | |
| Plaintiff, | |
| v. | CAUSE NO. 3:22-CV-629 DRL |
| D. HAWKINS *et al.*, | |
| Defendants. | |

OPINION AND ORDER

Rodney S. Perry, Sr., a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding against Officer David Hawkins, a former property officer at Indiana State Prison (ISP), "in his individual capacity for monetary damages for impeding the exercise of his religion by depriving him of his religious materials without a legitimate penological objective, in violation of the First Amendment[.]" ECF 17 at 4. Second, he is proceeding against Warden Ron Neal for injunctive relief under the Religious Land Use and Institutionalized Persons Act (RLUIPA) to prevent Warden Neal from "depriving him of his religious materials, if the restrictions are not the least restrictive means of furthering a compelling governmental interest, in violation of RLUIPA[.]" *Id.* The defendants filed a motion for summary judgment. ECF 80. Mr. Perry filed a response, and the defendants filed a reply. ECF 87, 88, 94. Mr. Perry then filed a

motion for leave to file a surreply, and the defendants filed a response. ECF 95, 96.[1] Mr. Perry also filed motions for appointment of counsel. ECF 102, 103. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

A. *First Amendment Claim.*

Mr. Perry is proceeding against Officer Hawkins "for impeding the exercise of his religion by depriving him of his religious materials without a legitimate penological objective, in violation of the First Amendment[.]" ECF 17 at 4. Prisoners have a right to exercise their religion under the free exercise clause of the First Amendment. *Vinning-El*

---

[1] Northern District of Indiana Local Rule 56-1(b) provides an opportunity for only a single response. Nevertheless, the court has reviewed the contents of Mr. Perry's surreply, and concludes the arguments raised in it have no impact on the disposition today. Therefore, his motion for leave to file a surreply will be denied.

*v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Nevertheless, correctional officials may restrict the exercise of religion if the restrictions are reasonably related to legitimate penological objectives, such as the safety and security of the prison facility. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). The court considers (1) whether the restriction is rationally connected to a legitimate government objective; (2) whether there is an "alternative means of exercising" the restricted religious right; (3) what impact the restriction would have on other inmates as well as prison staff and facility resources; and (4) the existence of other options that would suggest the prison is exaggerating its concerns. *Id.* at 89-91.

Officer Hawkins argues summary judgment is warranted in his favor because there's no evidence he intentionally deprived Mr. Perry of any religious materials. In support of this argument, he provides four exhibits.

First, Officer Hawkins provides an affidavit[2] from Dawn Buss, the Deputy Warden of Re-Entry at ISP, who attests to certain facts. Mr. Perry arrived at ISP on December 15, 2021, and was placed in restrictive housing due to conduct he'd committed at his previous prison facility. ECF 80-1 at 1. Inmates in restrictive housing are allowed access to religious materials, including religious books and texts. *Id.* at 2. However, because of the security threats associated with restrictive housing, the amount and nature of

---

[2] Mr. Perry argues repeatedly that each of the affidavits provided by Officer Hawkins should be stricken from the record as noncompliant with Rule 56(c)(1)(A) because they do not cite to materials in the record. Affidavits are not governed by Rule 56(c)(1)(A), but by Rule 56(c)(4), which provides only that an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The affidavits provided by Officer Hawkins comply with Rule 56(c)(4), so are properly considered as evidence.

property inmates may have in restrictive housing is more limited than general population. *Id.* Accordingly, an inmate in restrictive housing can only have up to three softback books and three magazines in his cell at a time. *Id.* Allowing an inmate in restrictive housing to have additional books and magazines beyond this limit poses significant security concerns, as he could use the excess property to start fires or conceal weapons and other contraband. *Id.* Additionally, hardback books are not allowed in restrictive housing because of their ability to be used as weapons. *Id.* While an inmate is in restrictive housing, his excess property is stored in the facility's property room, and he can exchange the property in his cell for his other property by submitting a request to the property room. *Id.* On December 12, 2022, Mr. Perry was moved out of restrictive housing and into general population, where he is currently housed. *Id.*

Second, Officer Hawkins provides his own affidavit, in which he attests to certain facts. During his time as the facility's property officer, Officer Hawkins used great care when handling the inmates' property. ECF 80-2 at 1. He followed the facility's applicable property policies, applied the policies fairly and equally, and didn't discriminate against any inmate based on his religion. *Id.* Officer Hawkins never prevented Mr. Perry from having any property based on the property's religious nature, and never destroyed any of Mr. Perry's property. *Id.*

Third, Officer Hawkins provides Mr. Perry's deposition testimony, where he testified to certain facts. When Mr. Perry left restrictive housing in December 2022, Major Wardlow gave him a bag with his property, which contained some religious papers and legal paperwork, but some religious materials were missing. ECF 80-4 at 34-35. Mr. Perry

does not know when or how his religious materials got lost, but he believes they got lost because Officer Hawkins inadvertently mixed his property with other inmates' property. *Id.* at 20, 23. Mr. Perry acknowledged that other prison staff have access to the facility's property room aside from Officer Hawkins. *Id.* at 14-15.

Lastly, Officer Hawkins provides an affidavit from Douglas Wardlow, a correctional major at ISP, who attests he has searched the facility's property room and has not located any property belonging to Mr. Perry or any record of Mr. Perry's property being confiscated. ECF 80-3 at 1.

Officer Hawkins argues summary judgment is warranted in his favor because Mr. Perry doesn't know what happened to his religious materials and his speculation that Officer Hawkins lost those materials is insufficient to defeat summary judgment. ECF 83 at 2-3. Moreover, Officer Hawkins argues that, even assuming he inadvertently lost Mr. Perry's religious materials, there's no evidence he did so intentionally and the fact the materials were religious in nature does not transform the loss of property into a First Amendment violation. *Id.* at 3-4.

In response, Mr. Perry argues Officer Hawkins violated his First Amendment rights because he mishandled and lost his religious materials. ECF 88 at 14-17. But Mr. Perry provides only speculation that Officer Hawkins was responsible for losing his religious materials. Specifically, while Mr. Perry testified that some of his religious materials went missing while he was confined in restrictive housing, he admitted he didn't actually know how or when those materials went missing. ECF 80-4 at 20-21, 23. Mr. Perry speculated his religious materials likely got lost because Officer Hawkins

5

mixed his property with other inmates' property, but he conceded he didn't actually see Officer Hawkins go through his property. *Id.* at 20-21. He also conceded that Officer Hawkins was not the only member of prison staff with access to the property room. *Id.* at 14-15. Officer Hawkins attests he used great care in handling Mr. Perry's property and never destroyed any of his property, and Mr. Perry's speculation to the contrary is insufficient to create a genuine dispute. *See Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) ("inferences relying on mere speculation or conjecture will not suffice" to survive summary judgment). Therefore, the record contains insufficient evidence by which a reasonable jury could conclude Officer Hawkins was responsible for losing Mr. Perry's religious materials.

Moreover, even assuming Officer Hawkins was responsible for mishandling and losing Mr. Perry's religious materials, this does not show a First Amendment violation because there's no evidence Officer Hawkins' conduct went beyond mere negligence. *See Beese v. Liebe*, 51 F. App'x 979, 981 (7th Cir. 2002) ("Negligence, however, does not rise to the level of a constitutional violation actionable under § 1983"). Mr. Perry's testimony alleges only that Officer Hawkins negligently mishandled and lost his religious materials, and he doesn't argue or provide any evidence Officer Hawkins intentionally mishandled those materials due to their religious nature. *See Williams-Bey v. Brooks*, 3:05-CV-150 RM, 2005 WL 1172438, 2 (N.D. Ind. Apr. 28, 2005) (noting the fact "[t]hat property destroyed by jail officials is legal or religious in nature does not morph the loss of property claim into a First Amendment free exercise claim"); *Beese*, 51 F. App'x 979 (affirming grant of summary judgment in favor of prison official who negligently violated prison's mail

6

policy by opening legal mail outside of inmate's presence); *Bray v. Wilkey*, No. 3:20-CV-645-MGG, 2023 WL 3295160 (N.D. Ind. Mar. 15, 2023) (defendants' conduct of negligently withholding an inmate's mail did not rise to the level of a First Amendment violation). Thus, even assuming Officer Hawkins was responsible for mishandling and losing Mr. Perry's religious materials, there's no evidence this conduct rose to the level of a First Amendment violation.

Mr. Perry raises two additional arguments that must be addressed. First, Mr. Perry argues Officer Hawkins impeded the exercise of his religion because Mr. Perry submitted numerous requests to Officer Hawkins for his religious materials while he was in restrictive housing but Officer Hawkins refused to provide the materials. ECF 88 at 13. In support, Mr. Perry cites to numerous "Request for Interview" forms he submitted to Officer Hawkins and Major Wardlow. ECF 87-1 at 18-19, 21-23, 27. However, a review of these exhibits shows that Mr. Perry only requested "legal materials" from Officer Hawkins, and does not show Officer Hawkins ever deprived him of any religious materials. *See id.*

Specifically, Mr. Perry's exhibits show the following facts. On January 4, 2022, Mr. Perry submitted a request to Officer Hawkins that he be provided with all his "legal materials." ECF 87-1 at 18. On January 6, 2022, Mr. Perry sent a request to Major Wardlow stating Officer Hawkins was refusing to provide him his "legal materials." *Id.* at 19. Major Wardlow responded that Mr. Perry was only allowed one box in his cell at a time, and he could swap that box for a different one if he needed something. *Id.* Mr. Perry then sent another request to Officer Hawkins requesting his "legal materials," and Officer Hawkins

7

responded that he'd sent a box over on January 19 to "exchange out." *Id.* at 21. On February 7, 2022, Mr. Perry sent another request to Officer Hawkins stating he'd been provided the wrong "legal materials." *Id.* at 22. Officer Hawkins responded that Mr. Perry had come to the property room on February 7 and switched out for what he needed. *Id.* On February 10, 2022, Mr. Perry sent another request to Officer Hawkins stating he'd only been allowed to take a box that Officer Hawkins already had put together and hadn't been allowed to search for the "legal materials" he needed. *Id.* at 23. He also stated he'd been denied access to his hardback religious books. *Id.* Officer Hawkins responded that Mr. Perry was "already over here and given what was requested," and that they were done conducting business unless he needed hygiene. *Id.* On July 13, 2022, Mr. Perry sent a request to Major Wardlow (not to Officer Hawkins) asking Major Wardlow to look through his personal property and provide all his "religious materials." *Id.* at 27. Major Wardlow responded that he looked through Mr. Perry's property and only saw legal work. *Id.*

Here, the exhibits provided by Mr. Perry show he only submitted requests to Officer Hawkins for his "legal materials," and never requested any religious materials except for hardback books (which prison policy prevented him from having in restrictive housing). *See* ECF 87-1 at 18, 19, 21-23, 27. Deputy Warden Buss attests Mr. Perry was allowed three softback books and three magazines in his cell at a time and could have submitted requests to exchange these materials, and Mr. Perry provides no evidence disputing this attestation or showing he ever submitted any requests for religious materials that were ignored or denied by Officer Hawkins. Thus, because the exhibits

8

provided by Mr. Perry show he only requested legal materials from Officer Hawkins and never requested any religious materials, no reasonable jury could conclude these exhibits show Officer Hawkins impeded the exercise of Mr. Perry's religion.

Second, Mr. Perry argues Officer Hawkins impeded the exercise of his religion by refusing to provide him his hardback religious books from the property room. ECF 88 at 15; ECF 80-4 at 21. Here, Mr. Perry does provide evidence he requested his hardback religious books from Officer Hawkins and was denied. *See id.* But it's undisputed that ISP policy prevented Mr. Perry from possessing hardback books while in restrictive housing, and Mr. Perry provides no evidence Officer Hawkins was responsible for creating or misapplying that policy. Because it's undisputed Officer Hawkins was not permitted under ISP policy to provide Mr. Perry hardback books in restrictive housing, no reasonable jury could conclude Officer Hawkins violated Mr. Perry's First Amendment rights by failing to provide those books. *See Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (a defendant "cannot be held liable for failing to do something he had no authority to do."). Mr. Perry does not argue or provide any evidence that ISP's policy preventing inmates in restrictive housing from possessing hardback books was unlawful or unconstitutional. Regardless, Officer Hawkins provides evidence this policy was reasonably related to ISP's legitimate penological objective of maintaining the safety and security of the facility, as hardback books can be used as weapons and inmates were allowed to possess softback books and magazines instead. *See* ECF 80-1 at 1; *Turner*, 482 U.S. at 89-91. Thus, even assuming Officer Hawkins was responsible for restricting the

exercise of Mr. Perry's religion by withholding his hardcover religious books, the undisputed facts show this restriction was valid under *Turner*.

Accordingly, there's insufficient evidence in the record by which a reasonable jury could conclude Officer Hawkins deprived Mr. Perry of his religious materials in violation of his First Amendment rights. Therefore, summary judgment is warranted in favor of Officer Hawkins on this claim.[3]

B.  *RLUIPA Claim.*

Mr. Perry proceeds against Warden Neal for injunctive relief to prevent him from "depriving him of his religious materials, if the restrictions are not the least restrictive means of furthering a compelling governmental interest, in violation of RLUIPA[.]" ECF 17 at 4. RLUIPA affords even broader protections than the First Amendment. This act prohibits governmental entities from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see generally Holt v. Hobbs*, 574 U.S. 352 (2015).

Warden Neal argues Mr. Perry's RLUIPA claim is now moot because Mr. Perry only takes issue with the way a former property officer handled his property and does not contend that any current facility practice is substantially burdening his religious

---

[3] The court does not reach Officer Hawkins' alternative argument that he is entitled to qualified immunity.

beliefs. ECF 83 at 6. Warden Neal notes Mr. Perry is no longer housed in restrictive housing and none of his property is currently held in the property room. ECF 83 at 6. In his response, Mr. Perry argues he was denied religious materials the entire time he was in restrictive housing and this claim was not "moot at the time of the event." ECF 88 at 21-23. But it's well settled that "[f]or a case to be justiciable, a live controversy must continue to exist at all stages of review, not simply on the date the action was initiated." *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006). Because it's undisputed Mr. Perry is no longer housed in the restrictive housing unit and there's no evidence he has any religious property in the facility's storage room, the undisputed facts show Mr. Perry does not have a live claim against Warden Neal for depriving him of his religious materials.

Mr. Perry also argues this claim is not moot because it could repeat in the future if he returns to restrictive housing. ECF 88 at 23. The "capable-of-repetition" exception to the mootness doctrine applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Ciarpaglini v. Norwood*, 817 F.3d 541, 546 (7th Cir. 2016). Here, there's no reasonable expectation Mr. Perry will be subject to the same action again, as Mr. Perry argues only that he was denied his religious materials by Officer Hawkins, who no longer works as a property officer at ISP. Mr. Perry doesn't argue or provide evidence ISP has any unconstitutional policy in place that would restrict him from possessing religious

11

materials if he returned to the restrictive housing unit. ECF 88 at 21-24. Therefore, summary judgment is warranted in favor of Warden Neal on this claim.

Last, Mr. Perry filed motions for counsel. ECF 102, 103. But there is a fully-briefed summary judgment motion before the court, and appointing counsel now would not alter the outcome. The summary judgment will be granted, and there is no need for counsel on a continuing basis. Therefore, the motions for counsel will be denied.

For these reasons, the court:

(1) DENIES Mr. Perry's motion for leave to file a surreply (ECF 95);

(2) DENIES Mr. Perry's motions for appointment of counsel (ECF 102, ECF 103);

(3) GRANTS the defendants' motion for summary judgment (ECF 80); and

(4) DIRECTS the clerk to enter judgment in favor of the defendants and against Rodney S. Perry, Sr., and to close this case.

SO ORDERED.

March 10, 2025                              *s/ Damon R. Leichty*
                                            Judge, United States District Court